IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 21, 2009

## QUANTRAVEOUS WILLIAMS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County
Nos. 2007-A-554, 2006-D-3154   Monte Watkins, Judge**

---

**No. M2008-02406-CCA-R3-PC - Filed April 29, 2010**

---

Petitioner, Quantraveous Williams, appeals the post-conviction court's dismissal of his post-conviction petition in which Petitioner alleged that he received the ineffective assistance of counsel in connection with the entry of his pleas of guilty and that his pleas of guilty were not entered into voluntarily or knowingly.  After a through review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Quantraveous Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; Roger Moore, Assistant District Attorney General; and Jeff Burks, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Petitioner was indicted in case no. 2006-D-3154 for aggravated burglary, a Class C felony, in counts one and three of the indictment; for aggravated robbery, a Class B felony, in counts two and four; and for evading arrest, a Class A misdemeanor, in count five. According to a negotiated plea agreement, Petitioner entered a plea of guilty to two counts of aggravated robbery in case no. 2006-D-3154 as a Range I, standard offender, and the State agreed to enter a nolle prosequi as to counts one, three, and five.  Petitioner agreed to a

sentence of eight years for each conviction to be served consecutively with each other but concurrently to the sentence in case no. 2007-A-554.

Petitioner was indicted in case no. 2007-A-554 for first degree premeditated murder in count one of the indictment, first degree felony murder in count two, especially aggravated robbery, a Class A felony, in count three, and tampering with evidence, a Class C felony, in count four. Petitioner entered a plea of guilty in case no. 2007-A-554 to the lesser included offense of facilitation of first degree premeditated murder in count one, and the State agreed to enter a nolle prosequi as to the remaining counts. Petitioner agreed to a sentence of twenty years with a release eligibility date of sixty percent for his facilitation conviction to be served concurrently with his sentences in case no. 2006-D-3154 for an effective sentence of twenty years.

At the guilty plea submission hearing, the State offered the following factual basis in support of Petitioner's convictions:

> The State's proof [in case no. 2006-D-3154], Your Honor, that on the 26th day of July, 2006, at 2819 Lebanon Pike, which is in Davidson County, [Petitioner] and the co-defendant, Maurice Pinson, forced the door to a residence of Ruth Young, both had . . . handguns, demanded money from her. Took an amount of money, approximately two hundred dollars from her and fled the residence, whereupon Ms. Young called 911.

> Police officers were on the way. . . . [Petitioner] and Mr. Pinson, per Ms. Young, broke into the residence again and robbed Ms. Young again, this time getting around five hundred dollars from Ms. Young, who ran a business out of a portion of this residence. When the police arrived at the scene they found both [Petitioner] and Mr. Pinson in a wooded area behind this residence. They recovered handguns, money, and clothing consistent with Ms. Young's complaint. Both [Petitioner] and Mr. Pinson were interviewed by Detective Swisher and admitted the preceding facts.

> With regard to [case no.] 2007-A-554, the State's proof at trial would have been on May the 5th, 2006, Glenn Wilson was found shot to death at 2481 Twenty-Sixth Avenue North in Davidson County, which is the Cumberland View residential complex. Mr. Wilson was in a vehicle there, and . . . detectives interviewed various people there at Cumberland View. There was a witness who identified [Petitioner] as leaving the – approximately, the scene of that residence, wiping something off.

[Petitioner] was interviewed and admitted to taking a handgun from the scene and putting it in a mailbox. [Petitioner], however, stated that it was Ronald Clark, his co-defendant, who had actually shot the victim, Mr. Wilson. There is a witness who would say, we anticipate, that [Petitioner] participated in the attempted robbery of Mr. Wilson if not that [Petitioner] was the actual shooter. However, [Petitioner's] own statement was that he had been present, but that Ronald Clark shot the victim. So, it is our position that Mr. Williams, at the very least, facilitated this event.

The trial court explained the constitutional rights Petitioner was foregoing by entering a plea of guilty, and Petitioner acknowledged that he understood. The trial court asked Petitioner if he had reviewed the negotiated plea agreement with trial counsel and understood the terms of the plea agreement, to which Petitioner responded, "Yes." At the conclusion of the submission hearing, the trial court accepted Petitioner's pleas of guilty in case nos. 2006-D-3154 and 2007-A-554, and imposed the agreed upon sentences.

## II. Post-Conviction Hearing

At the post-conviction hearing, trial counsel in case no. 2006-D-3154, G. Wayne Davis, testified that he had practiced law for thirty-two years, primarily in the area of criminal law. Mr. Davis stated that his representation commenced after Petitioner, who was a juvenile at the time of the offenses, was transferred to the Davidson County Criminal Court to be tried as an adult. Mr. Davis said that he met several times with Petitioner and his parents and reviewed the State's evidence against Petitioner. Mr. Davis believed that the State's case against Petitioner was very strong.

Mr. Davis said that he attempted to review the videotape of the juvenile proceedings but was unable to secure a copy of the tape. Mr. Davis did not have a present recollection of reviewing Petitioner's mental health history or that he was aware that Petitioner had a learning disability which made reading difficult. Mr. Davis stated that it was his practice to read a plea agreement to a defendant and answer any questions he or she might have.

Mr. Davis said that initially Petitioner's two cases were handled separately but later there were joint meetings with trial counsel in case no. 2007-A-554 and the prosecutor. Mr. Davis stated that the possibility of the death penalty for the murder charges was not mentioned during these conferences, and Mr. Davis said that he would not have mentioned the word "death" because Petitioner was a juvenile.

On cross-examination, Mr. Davis said that Petitioner and his co-defendant were seen coming out of the victim's home by the police officers who were responding to the victim's

911 call, and Petitioner and his co-defendant were apprehended a few feet away with the money taken from the victim. Mr. Davis stated that Petitioner also gave a statement to the investigating officers in which he admitted that he had committed the offenses. Based on these factors, Mr. Davis was left without a defense to present at trial. Mr. Davis said that if Petitioner had displayed any indication of mental illness, he would have requested an evaluation. Mr. Davis stated, however, that Petitioner would have undergone a mental evaluation before he was transferred from juvenile court.

Trial counsel in case no. 2007-A-554, Vincent Wyatt, testified that he had been practicing law for eight years primarily in the area of criminal law and was retained to represent Petitioner. Mr. Wyatt said that he met with Petitioner approximately nine or ten times prior to the guilty plea submission hearing. Mr. Wyatt stated that several individuals were interviewed in connection with the victim's death. Petitioner gave two statements about the incident. In the first, he denied any involvement with the shooting. In his second statement, Petitioner said that he was present at the scene of the offense, but that he did not shoot the victim. Mr. Wyatt said that Shawna Evans initially identified Petitioner as the shooter, but she later recanted her statement. Mr. Wyatt believed that Petitioner understood the strengths and weaknesses of the State's case, and he did not have any recollection that Petitioner suffered from bipolar disorder.

Mr. Wyatt stated that the State chose to proceed first with case no. 2006-D-3154. It was Mr. Wyatt's belief that in the event Petitioner was convicted in that case, then the State would use the convictions for impeachment purposes if Petitioner decided to testify in case no. 2007-A-554. Mr. Wyatt said that he met with the prosecutor and Mr. Davis concerning the two cases at least twice. Mr. Wyatt stated that he felt it was in Petitioner's best interest to settle both cases at the same time.

Mr. Wyatt said that he initially offered to settle the case with an agreed upon sentence of twenty years as a Range I, standard offender. The State, however, rejected that offer and countered with an agreed upon sentence of twenty years with a release eligibility of sixty percent. Trial counsel said that Petitioner was disappointed with the State's offer but chose to accept it rather than face the risk of an effective sentence of fifty-one years if convicted on the first degree murder charge.

Mr. Wyatt stated that it was his recollection that he went over the plea agreement with Petitioner, and that Petitioner did not have any questions about the terms of his agreement. Mr. Wyatt acknowledged that the plea agreement reflected that the range of punishment for first degree murder was "death, imprisonment for life without the possibility of parole, or imprisonment for life." Mr. Wyatt said that he "certainly made a mistake" when he drafted the agreement. Mr. Wyatt explained, "I simply, you know, looked in the book and probably

just copied it right out of the book without taking into consideration that my client was a juvenile." Mr. Wyatt stated, however, that he had discussed the potential punishment with Petitioner on several occasions before the terms of the negotiated plea agreement were reduced to writing, and a penalty of death was never mentioned nor did Petitioner ask Mr. Wyatt if the death penalty was a possibility. Mr. Wyatt denied that he advised Petitioner that the convictions in the robbery case could be used as an aggravating factor to support the imposition of the death sentence in the murder case. Mr. Wyatt said that he learned after the guilty plea submission hearing that Petitioner's co-defendant had entered a plea of guilty and received a lesser sentence than Petitioner.

Petitioner testified that he met with Mr. Davis concerning the robbery charges, but he did not recollect if Mr. Davis discussed the State's evidence against him. Petitioner testified that he had been diagnosed as bipolar and schizophrenic and he took Welbutrin and Devocain on a daily basis. Petitioner stated that as a result of his mental disorders he had difficulty understanding Mr. Davis' conversations about his case, but he said that he did not tell Mr. Davis about this difficulty.

Petitioner said that he met with Mr. Wyatt "multiple times" before the guilty plea submission hearing, and Mr. Wyatt explained the State's evidence against him. Petitioner acknowledged that he had given a statement to the investigating officers implicating himself in the commission of the murder. Petitioner also acknowledged that he knew that certain witnesses might testify that he was at the scene of the crime. The following colloquy then occurred:

| [COUNSEL]: | Okay. And do you remember discussing with Mr. Wyatt what could possibly happen to you, if you were convicted in the first degree murder case. |
|---|---|
| [PETITIONER]: | Yes, sir. Life. He told me I could receive life. It was a possibility I could receive life if I take it to trial. But if they convict me – if I take my first case to trial and they convict me, then I could, there was a possibility that the jury will convict me on the murder. |
| [COUNSEL]: | All right. Did he have any discussions with you about whether or not you would be eligible to receive a sentence of death? |
| PETITIONER: | In the paper. In my plea bargain. |

[COUNSEL]:          Did he have discussions with you personally about that?

PETITIONER:          I don't recall.

Petitioner then stated that it was his understanding that if he was convicted of the robbery and burglary charges first, the he "would automatically get convicted on the murder case and end up with life in jail."

On cross-examination, Petitioner said that he dropped out of school during the ninth grade and that he could only read and write "a little." Petitioner acknowledged that he wrote an essay for the Juvenile Court about the adverse effects of drugs when he was thirteen years old. The State introduced the handwritten essay as an exhibit without objection. Petitioner said that he understood that he did not have any available defenses to the robbery and burglary charges, and that Mr. Davis and Mr. Wyatt were acting in his best interest. Petitioner stated that he did not like the terms of the negotiated plea agreement for his murder case, but he acknowledged that he did not tell the trial court at the submission hearing that he was dissatisfied with either counsel.

Celesta Ewin, Petitioner's mother, testified that she retained Mr. Davis and Mr. Wyatt to represent Petitioner in case nos. 2006-D-3154 and 2007-A-554. Ms. Ewin acknowledged that Petitioner was on bond in the first case when he was charged with murder in the second case. Ms. Ewin said that she met with both Mr. Davis and Mr. Wyatt on several occasions and was not satisfied with the assistance they were providing. As an example, Ms. Ewin stated that she did not know how Petitioner could be charged with multiple offenses in case no. 2006-D-3154 "when it was just one day." Ms. Ewin said that Mr. Wyatt first told her that the State would agree to a sentence of sixteen years in the murder case, but then he said that State changed the length of the sentence to twenty years.

Ms. Ewin said that Mr. Wyatt told her that Petitioner could receive the death penalty if he was convicted of first degree murder, and that possibility scared her. Ms. Ewin stated that she discussed the possibility of a death penalty with Defendant. Ms. Ewin stated that both attorneys told her that they had done everything they could, and it was in Petitioner's best interest to accept the offers of settlement. Ms. Ewin said that Petitioner had suffered from mental health problems since he was two years old. Petitioner was diagnosed with bipolar disorder when he was in the second grade and with schizophrenia when he was fifteen years old. Ms. Ewin stated that Petitioner had learning disabilities and could not read well.

The post-conviction court found Mr. Wyatt's and Mr. Davis's testimony credible, and found that Petitioner's counsel had each advised Petitioner concerning the nature of the

charges against him and the penalties attached to the charges. The post-conviction court found that Ms. Ewin's assertions that Petitioner suffered from bipolar disorder and schizophrenia were not supported by the evaluation performed by the Middle Tennessee Mental Health Institute from July 2006 until August 2006, which evaluation was introduced as an exhibit at the post-conviction hearing. The post-conviction court found that Petitioner knowingly and voluntarily entered into the negotiated plea agreement and denied Petitioner's petition for post-conviction relief.

## III. Standard of Review

To succeed on a challenge of ineffective assistance of counsel, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-210(f). However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to *de novo* review. *Id*.; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he or she must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he or she must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id*. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his or her counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id*. Failure to satisfy either prong will result in the denial of relief. *Id*. Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In cases involving a guilty plea, the petitioner must show prejudice by demonstrating that, but for counsel's

errors, he or she would not have pleaded guilty but would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 42, 59, 106 S. Ct. 366, 370 (1985); *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

## IV. Ineffective Assistance of Counsel

Petitioner argues that Mr. Wyatt provided ineffective assistance because he erroneously advised Petitioner that should he choose to go to trial in both cases, the State could use his convictions in case no. 2006-D-3154 as aggravating factors in support of the death penalty in case no. 2007-A-554. Although Petitioner could not recollect at the post-conviction hearing whether Mr. Wyatt actually advised him that he was eligible for the death penalty, Petitioner attributes this failing to his mental disorders and inability to read or write. Petitioner submits that these factors made it difficult to comprehend what Mr. Wyatt was advising. Petitioner points to Ms. Ewin's testimony in support of his contention that Mr. Wyatt advised Petitioner that he was eligible for the death penalty and that Petitioner suffered from mental and learning disabilities.

Petitioner was referred to the Middle Tennessee Health Institute by the Juvenile Court for evaluation following his arrest for the charges in case no. 2006-D-3154. During the evaluation process, it was noted that Petitioner's mother and maternal grandmother have been diagnosed with bipolar disorder. The medical staff, however, concluded that Petitioner "has average intellectual abilities and low average academic achievement." No evidence of mental illness is noted in the evaluation, and no medication was prescribed at the conclusion of the process. Petitioner did not attend special education classes while in school. Petitioner reported that his favorite activity is writing. Petitioner also reported that he relieved stress, anger and depression by writing. Petitioner's essay, "What I Learned from Smoking Weed," is organized and articulate although the spelling and sentence structure are at times deficient. The evidence does not preponderate against the trial court's finding that the record does not support Petitioner's contention that he did not understand the guilty plea submission process or his counsel's advice as a result of mental illness or illiteracy.

The trial court credited Mr. Wyatt's testimony that he did not tell Petitioner that he could receive the death penalty if he choose to go to trial on the murder charge and that the notation on the guilty plea submission form that death was a potential penalty for first degree murder was an error. Petitioner testified at the post-conviction hearing that Mr. Wyatt advised him that he could receive a life sentence if he was convicted of first degree murder. Petitioner said that he saw the notation, "death," included in the range of punishment reflected on his petition to enter a plea of guilty, but he did not recollect that he had any discussions about a death penalty with Mr. Wyatt. Petitioner testified that he met with Mr. Wyatt several times concerning the murder charge in case no. 2007-A-554, that Mr. Wyatt

explained the State's evidence against him, that he was aware that his statement to the investigating officers implicated himself in the commission of the murder, and that he would be sentenced to life imprisonment if convicted of first degree murder. Based on our review, we conclude that the evidence does not preponderate against the trial court's finding that Petitioner had failed to show that Mr. Wyatt's assistance during the guilty plea submission process was deficient. Petitioner is not entitled to relief on this issue.

Petitioner argues that Mr. Davis provided ineffective assistance of counsel because he failed to thoroughly investigate case no. 2006-D-3154. Petitioner points out that Mr. Davis was unaware that the victim had testified in a juvenile court proceeding that nothing was taken during the second robbery. Petitioner, however, did not call the victim as a witness at the post-conviction hearing or introduce the transcript of the pertinent proceeding. The trial court credited Mr. Davis' testimony that Petitioner and his co-defendant were seen leaving the victim's house by the police officers who had responded to the victim's 911 telephone call, that Petitioner was apprehended with the money taken from the victim, and that Petitioner admitted to the investigating officers that he had committed the offenses. Based on our review, we conclude that the evidence does not preponderate against the trial court's finding that Mr. Davis' assistance was not deficient. Petitioner is not entitled to relief on this issue.

## V. Entry of Pleas of Guilty

When an accused enters a plea of guilty, constitutional considerations mandate that the plea be voluntarily, understandingly and knowingly entered. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1713 (1969); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1997). By entering a plea, the defendant waives certain constitutional rights including the privilege against self-incrimination, the right to a trial by jury, and the right to confront witnesses. *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1714. The defendant's waiver of these constitutional rights may not be presumed from a silent record. *Id*. The trial court must ascertain if the defendant fully understands the significant consequences of his or her plea. *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1977). The trial court may consider a number of factors including the defendant's relative intelligence, his or her familiarity with criminal proceedings, whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about options, the advice given by counsel and the trial court about the charges against the defendant and the penalty to be imposed, and the defendant's reasons for pleading guilty. *Blakenship*, 858 S.W.2d 897, 904 (Tenn. 1993).

Petitioner argues that his pleas of guilty in both cases were not knowingly entered into because he "has mental health problems, can barely read and write, and was given erroneous advice from his defense counsel." The evidence introduced at the post-conviction hearing

indicates, however, that Petitioner is literate and able to communicate ideas through words. We observe that Petitioner informed the trial court during the guilty plea submission hearing that he suffered from bipolar disorder, although this was not the conclusion of his mental evaluation. Nonetheless, upon being advised of this fact, the trial court questioned Petitioner about the purpose of the proceeding. Petitioner told the trial court that he was "pleading guilty" and that he had agreed to a sentence of "twenty years at sixty percent" for facilitation of first degree murder. Petitioner also stated that he was entering pleas of guilty to two counts of aggravated robbery with an agreed upon effective sentence of sixteen years to be served concurrently with his facilitation sentence. Petitioner stated that he had reviewed the plea agreement with his counsel and that he understood the terms of the agreement. The post-conviction court credited the testimony of Petitioner's counsel and found Petitioner's and Ms. Ewin's testimony not to be credible.

Based on our review, we conclude that the evidence does not preponderate against the post-conviction court's finding that Petitioner knowingly and voluntarily entered his pleas of guilty in case nos. 2006-D-3154 and 2007-A-554. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE